IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                         Criminal Action No. 5:11CR32
                                                                 (STAMP)
DAWANTAYE BOSWELL,

    Defendant.


**MEMORANDUM OPINION AND ORDER
AFFIRMING AND ADOPTING REPORT AND
RECOMMENDATION OF MAGISTRATE JUDGE AND
DENYING DEFENDANT'S MOTIONS TO SUPPRESS**

I.  Procedural History

The defendant in the above-styled criminal action, Dawantaye Boswell, is the only defendant in a two-count indictment charging him in Count One of possession with intent to distribute more than 280 grams of cocaine base within 1,000 feet of a protected location in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 860, and in Count Two of establishment of manufacturing operations in violation of 21 U.S.C. § 856(a)(2). This indictment is based on the seizure of approximately 408 grams of cocaine base from the defendant's apartment on July 8, 2011. On August 20, 2011, the defendant filed two motions to suppress: (1) a motion to suppress evidence; and (2) a motion to suppress out-of-court identifications as unnecessarily suggestive and unreliable, and motion to suppress any subsequent in-court identification. On September 29, 2011, the

United States filed responses in opposition to both the defendant's motions to suppress.

United States Magistrate Judge James E. Seibert held an evidentiary hearing and argument on the defendant's motions to suppress on November 2, 2011. Following the evidentiary hearing, Magistrate Judge Seibert issued a report and recommendation recommending that the defendant's motions to suppress be denied. With regard to the motion to suppress evidence, the magistrate judge concluded that the evidence was obtained through the police officer's good faith reliance on the search warrant. The magistrate judge further found that the motion to suppress out-of-court identifications and any subsequent in-court identification should be denied because the totality of the circumstances indicates that the identification did not create a likelihood of misidentification. The magistrate judge informed the parties that if they objected to any portion of his recommendation, they may file written objections within fourteen (14) days of the date of the report and recommendation.

On November 21, 2011, the defendant filed timely objections to the report and recommendation. The United States filed a response to the defendant's objections on December 6, 2011. For the reasons set forth below, this Court agrees with the magistrate judge's findings and, accordingly, overrules the defendant's objections,

affirms and adopts the magistrate judge's report and recommendation in its entirety, and denies the defendant's motions to suppress.

## II. Facts

Early on the morning of July 8, 2011, officers responded to reports that shots had been fired at 17 7th Street in Wheeling, West Virginia.[1] When the officers arrived at the scene, they encountered Dawn Hanna and Danell Morris at the residence. Ms. Morris informed the officers that Jerome Ross and Marquis Bass had been at the residence counting their money when a black male entered the residence and demanded money. At some point during the encounter, the assailant struck Mr. Ross with the butt of his gun, causing the gun to discharge and the bullet to lodge in the bathroom wall.[2] Ms. Hanna told the officers that she saw the assailant, whose name she did not know but whose face she recognized, flee from the house. Ms. Hanna described the assailant as a dark-skinned black male with braids and she stated that she

---

[1] 17 7th Street is the address of the home of Marquis Bass' mother, Dawn Hanna. Danell Morris is Marquis Bass' girlfriend.

[2] During the investigation at the 7th Street residence, Sargent Kriner retrieved the shell casing and the bullet lodged in the bathroom wall. Officers also found a black magazine containing .380 bullets behind the front door. Sargent Kriner also located fresh blood drops on the stairs and in the bedroom. Later the morning of July 8, 2011, a neighbor found a firearm in his backyard in the 600 block of Main Street, but it is unclear if it is the weapon allegedly used by the defendant. Detective Harris also testified that money was found in a neighbor's backyard, but it is unclear whether this money is connected to the crime.

could likely identify him.  Ms. Hanna described the gun that the assailant waived as being dark in color.

After being struck by the gun, Mr. Ross fled to his sister's house at 524 Lane B in Wheeling, West Virginia.  When officers encountered him there, his sister was preparing to take him to the emergency room for treatment for injuries he sustained during the assault.  Mr. Ross reported to the officers that while at 17 7th Street with Marquis Bass, a black male had entered the bedroom and demanded money, and at some point during the scuffle he was "gun-butted" by the assailant.  According to Mr. Ross, the assailant allegedly stole between $500.00 and $12,000.00.  Initially, Mr. Ross claimed that he did not know the assailant, but he later identified the assailant as Dawantaye, the defendant in this case.  Mr. Ross stated that he and the defendant were associates and that the defendant lived at 514 Main Street, Wheeling, West Virginia.

After the officers finished interviewing Mr. Ross, they placed him in the back of their squad car and drove him to the 500 or 600 block of Main Street, where three individuals had been stopped by the police.  The three men were later identified as the defendant, Richard Hall, and Marquis Bass.[3]  Mr. Hall and Mr. Bass told the police that they were out walking to meet girls at an unknown address when they encountered the defendant who was talking about how he had just been robbed.  From the back of the squad car and

---

[3]Richard Hall and Marquis Bass are Ms. Hanna's sons.

with the spotlight on the group of individuals, Mr. Ross identified the defendant as the man who had taken his money and struck him with the gun. Subsequently, the police officers brought Ms. Hanna to the area where the three men were stopped. From the front passenger seat of the squad car, Ms. Hanna identified the defendant as the man she had seen with the gun in her house.[4] The officers arrested the defendant on state charges after he was positively identified by both Ms. Hanna and Mr. Ross.

After analyzing the information described above, Detective Harris applied to Magistrate Joseph Roxby in Ohio County for a warrant to search the defendant's residence for evidence of the crime, including firearms, magazines, bullets, bullet casings, and money. The affidavit included Mr. Ross's description of the robbery and the evidence found at the scene by Detective Harris. Magistrate Roxby signed the search warrant in Detective Harris' presence. During the execution of the search warrant, Detective Harris saw, in plain view, crack cocaine, marijuana, digital scales, and other items indicating that the defendant is involved in drug distribution and manufacturing.

After discovering the drugs and drug paraphernalia in the defendant's apartment, Detective Harris contacted Detective Gittings of the Ohio Valley Drug Task Force. Upon entering the

---

[4]Notably, the other two men standing with the defendant were Ms. Hanna's sons.

defendant's apartment, Detective Gittings observed the suspected crack cocaine and conducted a field test of the same, which was positive for cocaine. Detective Gittings then applied for a separate search warrant from Magistrate Roxby to search the house for controlled substances and evidence of distribution. After Magistrate Roxby signed the warrant, Detective Gittings and other officers with the Ohio Valley Task Force returned to the defendant's apartment to execute the warrant. The officers seized 408 grams of crack cocaine, marijuana, and other items. The seizures made during the execution of the second warrant form the basis for the instant federal charges.

### III. <u>Applicable Law</u>

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must conduct a <u>de novo</u> review of any portion of the magistrate judge's recommendation to which objection is timely made. As to those portions of a recommendation to which no objection is made, a magistrate judge's findings and recommendation will be upheld unless they are "clearly erroneous." See <u>Webb v. Califano</u>, 468 F. Supp. 825 (E.D. Cal. 1979). Because the defendant filed timely objections, this Court reviews <u>de novo</u> the magistrate judge's report and recommendation.

## IV. Discussion

### A. Motion to Suppress Evidence

In his motion to suppress evidence, the defendant argues that the evidence seized pursuant to the second search warrant should be suppressed because it was discovered as a result of the first search warrant, which was not supported by probable cause and demonstrated no nexus between the robbery and the defendant's apartment. The defendant contends that the first warrant alleges that the defendant pistol whipped Mr. Ross and stole approximately $12,000.00 in a cinch bag, but it failed to connect these events to the defendant's apartment, located several blocks away from the alleged armed robbery. According to the defendant, the information presented to Magistrate Roxby did not support a finding of probable cause. Further, the defendant argues that the good faith exception does not save the search warrant in this case because the bare-bones affidavit was insufficient to support probable cause and the officers' reliance on the affidavit was unreasonable.

In response, the government argues that regardless of whether the warrant was based on probable cause, it is clear that the officers executed the warrant in good faith. The United States contends that the affidavit contains facts based upon the interview with Mr. Ross, and that this interview gave the officers reason to believe that the defendant was the assailant, that he had returned

7

home after the robbery, and that they needed to look for evidence of the crime in the defendant's apartment.

In his report and recommendation, the magistrate judge makes no conclusion of law on the issue of probable cause for the warrant, finding that the good faith exception under United States v. Leon, 468 U.S. 897 (1984), would apply regardless of the Court's decision on the issue. Under the good faith exception, evidence obtained pursuant to a search warrant issued by a magistrate judge that was based on less than probable cause may still be admissible provided that the police officers who obtained and executed the warrant relied on the warrant in good faith. Id. The magistrate judge explains that the warrant affidavit did not contain any connecting phrases to demonstrate a nexus between the criminal items sought and the defendant's resident, nor did it indicate what criminal conduct would be established by searching the defendant's residence. Despite this deficiency, the magistrate judge held that Officer Harris acted in good faith on a court-issued warrant. Therefore, the evidence found pursuant to the second warrant is not fruit of the poisonous tree, and the motion to suppress evidence must be denied.

In his objections to the report and recommendation, the defendant contends that Leon was not satisfied because the officers behaved dishonestly or recklessly in preparing the affidavit. Further, the defendant argues that the officers could not have held

an objectively reasonable belief that probable cause for the warrant existed. According to the defendant, Magistrate Roxby was not presented with a full, good faith rendition of the facts, which should have caused him to question why a warrant was needed. This objection is without merit. There is no evidence on the record that the officers presented the search warrant application to Magistrate Roxby with a reckless disregard for the truth. See id. at 923 ("Suppression . . . remains an appropriate remedy if the magistrate . . . in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth."). Detective Harris testified that he reviewed the officers' reports of the events of July 8, 2011. Hr'g on Motions to Suppress Tr. 105, Nov. 2, 2011. Detective Harris also testified that he found evidence at the scene of the crime to corroborate those reports, specifically, a bullet hole in the bathroom, a blood splatter on the floor, and a shell casing that had been turned over to him. Hr'g on Motions to Suppress Tr. 102, 114, 126. After analyzing all of the information that he had gathered, Detective Harris requested a search warrant, including information in his affidavit relating to the events of July 8, 2011, the evidence found at the scene of the crime, and the evidence of the crime that the officers hoped to find. Hr'g on Motions to Suppress Tr. 107-10. Detective Harris swore to the affidavit in front of Magistrate Roxby, who then

signed the search warrant. Hr'g on Motions to Suppress Tr. 107. Accordingly, pursuant to Leon, even if the search warrant in this case was deficient, the exclusionary rule would not apply because Detective Harris had reasonable grounds for believing that the warrant was properly issued.

B. <u>Motion to Suppress Out-of-Court Identifications as Unnecessarily Suggestive and Unreliable and Motion to Suppress Any Subsequent In-Court Identification</u>

In his motion to suppress identifications, the defendant argues that Ms. Hanna's identification of him as the individual in possession of the gun was hampered and made problematic by the fact that the other two individuals present in the group of potential suspects on Main Street were her own two sons. The defendant asserts that Ms. Hanna identified the defendant as the perpetrator because she did not want to implicate either of her own children. Further, the defendant challenges Ms. Hanna's identification because she initially described the perpetrator as having braids, but the defendant's hair was not braided at the time of his arrest.

With respect to the identification at the roadside show-up by Mr. Ross, the defendant argues that Mr. Ross's reliability is undermined because the police prevented him from receiving medical care until after he had made an on-scene identification of the suspect. Further, the defendant states that Mr. Ross' identification is unreliable because he gave the police different

versions of his story with respect to the amount of money the defendant allegedly stole in the cinch bag.

In response, the government asserts that the out-of-court identifications by Mr. Ross and Ms. Hanna were both sufficiently reliable because: (1) during the robbery, the witnesses were able to see and observe the defendant in close proximity for a few minutes; (2) the witnesses were both familiar with the defendant and positively identified him as the man with the gun in the bedroom; and (3) only about thirty minutes had passed between the attack and robbery and the identifications by the witnesses.

Although the magistrate judge noted that there was a level of suggestiveness in the identification procedure in this case, he ultimately concluded that considering the factors in Neil v. Biggers, 409 U.S. 188, 199-200 (1972), there is no substantial likelihood of misidentification.

In his objections, the defendant again highlights the discrepancy between Ms. Hanna's description of the perpetrator as wearing braids and the defendant, who was not wearing braids. The defendant contends that Officer Pugh's opinion that the defendant's hair was frizzy because he had recently pulled out his braids is absurd because it would have been impossible to remove braids in the time between Ms. Hanna's alleged observation of the defendant and the show-up on Main Street. The defendant also reasserts his argument that Mr. Ross' identification is unreliable because he was

11

injured and presumably in pain during the show-up and because he gave the police varying versions of the robbery with regard to the amount of money stolen.

The admissibility of identification testimony depends upon whether the initial identification was impermissibly suggestive and, if so, whether the identification is nevertheless reliable. See Manson v. Brathwaite, 432 U.S. 98, 112-14 (1977). To determine the reliability of an identification, courts are to consider five factors: (1) the opportunity the witness had at the time of the crime to observe the perpetrator; (2) the degree of attention the witness paid at the time the crime was committed; (3) the accuracy of the witness's prior description of the perpetrator; (4) the degree of certainty with which the witness identifies the defendant as the perpetrator at the time of the identification; and (5) the length of time between the commission of the offense and the identification. See Neil, 409 U.S. at 199-200.

The United States Court of Appeals for the Fourth Circuit has adopted a "totality of the circumstances" standard for determining reliability, stating that trial courts are to determine whether "the identification was sufficiently reliable to preclude the substantial likelihood of misidentification." United States v. Johnson, 114 F.3d 435, 442 (4th Cir. 1997). Moreover, the Fourth Circuit has held that a witness's prior dealings with a defendant

may suffice to establish an independent basis for identification. See United States v. Morsley, 64 F.3d 907, 917 (4th Cir. 1995).

Importantly, this case involves an assailant who was known to both Ms. Hanna and Mr. Ross. Ms. Hanna had previously seen the defendant in the neighborhood, and Mr. Ross admitted that he had worked with the defendant as an "associate." Both witnesses stated that the defendant's face was known to them, making it possible for them to quickly identify him. Although there is some dispute as to whether Ms. Hanna's description of the assailant's hair matched the defendant's, there is no evidence in the record that Ms. Hanna or Mr. Ross ever expressed any uncertainty as to the identity of the defendant as the perpetrator. See Echevarria-Perez v. Burge, 779 F. Supp. 2d 326, 336 (W.D.N.Y. 2011) (stating that the fact that a suspect is distinguishable on the basis of one physical characteristic does not necessarily require suppression of a subsequent identification). Not only did the witnesses have ample time to observe the perpetrator during the robbery, but only thirty minutes had elapsed between the time of the assault and the identifications, suggesting that the identifications are reliable. For these reasons, this Court agrees with the report and recommendation of the magistrate judge and finds that the defendant's motion to suppress the out-of-court identifications must be denied. See State v. Capps, 441 S.E.2d 621, 625 (N.C. App. 1994) (holding that there was not a substantial likelihood of

misidentification by the witnesses). Because the identifications were constitutionally proper, subsequent in-court identifications would not be tainted. Accordingly, the defendant's request to suppress subsequent in-court identifications must be denied.

V. Conclusion

For the reasons stated above, this Court hereby OVERRULES the defendant's objections and AFFIRMS and ADOPTS the magistrate judge's report and recommendation in its entirety. Accordingly, the defendant's motion to suppress evidence is DENIED and the defendant's motion to suppress out-of-court identifications and subsequent in-court identification is DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to the defendant and to counsel of record herein.

DATED: December 21, 2011

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE